IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RALPH TAYLOR, JR., #1064683,

     Petitioner,

v.                                          Action No. 2:15cv246

HAROLD CLARKE,
Director, Virginia Department
of Corrections,

     Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Ralph Taylor, Jr. ("Taylor") is a Virginia inmate serving a 63 year active sentence following his 2002 convictions. His pro sé federal habeas petition under 28 U.S.C. § 2254 raises ten claims. (ECF No. 1). This case was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the undersigned recommends that the court grant Taylor's Motion to Amend (ECF No. 18), deny Taylor's Motion for Forensic Testing Experts (ECF No. 22), grant Respondent's Motion to Dismiss (ECF No. 15), deny Taylor's claims, and dismiss the petition.

### I.   STATEMENT OF THE CASE

This case arose out of two separate shootings that occurred on February 18, 2002. See, e.g., Trial Tr. at 98-99, 208-09,

1

Commonwealth v. Taylor, Nos. CR 52738 - 52746 (Va. Cir. Ct. Aug. 19, 2002). The first was the shooting of victim Adam Newell's car at a traffic light, and the second was the shooting of victim Taft Nesbitt in connection with the robbery of Nesbitt and Michael Blanchard. See, e.g., id. In August 2002, after a trial by jury in the Circuit Court of Prince William County, Taylor was convicted of the following charges related to the two events: robbery; shooting or throwing a missile at an occupied vehicle; aggravated malicious wounding; attempted capital murder; and four counts of use of a firearm in the commission of a felony. See id. Following Taylor's trial, he was sentenced to 138 years of incarceration, with 75 years suspended, resulting in a 63 year active sentence. Sentencing Order, Commonwealth v. Taylor, Nos. CR52738 - CR52746 (Va. Cir. Ct. Nov. 22, 2002) (ECF No. 17-1). Taylor appealed his convictions to the Court of Appeals of Virginia, which denied his appeal on July 9, 2003. Taylor v. Commonwealth, No. 3215-02-4 (Va. Ct. App. July 9, 2003). Taylor then sought review of his convictions in the Supreme Court of Virginia. The court dismissed his petition on September 10, 2003, on the ground that his notice of appeal was not timely filed. Taylor v. Commonwealth, No. 031933 (Va. Sept. 10, 2003).

On July 7, 2004, Taylor, with the assistance of counsel, timely submitted a petition for writ of habeas corpus to the

2

Supreme Court of Virginia. State Habeas Pet., _Taylor v. Johnson_, No. 041555 (Va. Feb. 28, 2005) (ECF No. 17-2).[1] He contested his convictions by alleging the following: (1) ineffective assistance of counsel in failing to timely file a notice of appeal to the Supreme Court of Virginia; (2) ineffective assistance of trial counsel in failing to timely investigate the Government's facts of the case; (3) ineffective assistance of trial counsel in failing to interview or subpoena potential witnesses; (4) trial counsel's lack of preparation induced Taylor to enter a plea; (5) ineffective assistance of trial counsel in failing to file pre-trial motions and challenges; and (6) the trial court erred in failing to grant Taylor's motions for a continuance. _Id._ On January 6, 2005, the Supreme Court of Virginia granted the petition solely on the issue of Taylor's right to appeal, and granted him the right to seek a delayed appeal of his convictions. _Taylor v. Johnson_, No. 041555 (Va. Jan. 6, 2005). Taylor then sought a delayed appeal, which the Supreme Court of Virginia refused on August 9, 2005. _Taylor v. Johnson_, No. 050750 (Va. Aug. 9, 2005). Taylor did not pursue any further habeas relief in state court.

Almost ten years later, on June 6, 2015, Taylor filed his current petition for writ of habeas corpus in this court

---

[1] Taylor's state habeas petition was prepared by counsel, but it was also reviewed and sworn to by Taylor himself. _See_ (ECF No. 17, at 19).

pursuant to 28 U.S.C. § 2254. (ECF No. 1). The petition raises the following claims:

(1) Trial counsel rendered ineffective assistance by failing to secure an allegedly exculpatory witness, Wilson Henley, whom Taylor claims admitted to committing the crime.

(2) Trial counsel rendered ineffective assistance by failing to investigate potentially exculpatory photographs mentioned during the testimony of victim Taft Nesbitt during Taylor's trial.

(3) Trial counsel rendered ineffective assistance by failing to explore possible forensic evidence related to the injuries suffered by Taft Nesbitt.

(4) Prosecution violated Brady v. Maryland, 373 U.S. 83 (1963), and Taylor's Fourteenth Amendment rights by suppressing recorded interviews of Taylor's accomplice, Renardo Robinson, which could have impeached Robinson's testimony.

(5) Trial counsel rendered ineffective assistance by failing to move to suppress Taylor's confession, which he claims was a product of coercion.

(6) Trial counsel rendered ineffective assistance by failing to present the testimony of John Thomas Robinson, who allegedly would have offered evidence of Taylor's character, particularly that he was not a racist.

4

(7) Trial counsel rendered ineffective assistance by failing to move for a mistrial in response to prosecution's allegedly improper closing argument.

(8) Trial counsel rendered ineffective assistance by failing to effectively cross-examine Renardo Robinson.

(9) The trial court deprived Taylor of his right to present a complete and full defense by denying his request to call Michael Blanchard, a prosecution witness, in order to present testimony that would impeach the credibility of other witnesses for the prosecution.

(10) Trial counsel rendered ineffective assistance by failing to raise a defense based on double jeopardy grounds.

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, Respondent timely filed an Answer (ECF No. 14) and Motion to Dismiss (ECF No. 15), along with a brief supporting the motion (ECF No. 17). Respondent argues that all of Taylor's claims are time-barred under the federal habeas statute of limitations, that his claims are simultaneously exhausted and defaulted, and that he has failed to meet his burden to pass through the "actual innocence" gateway set forth in Schlup v. Delo, 513 U.S. 298, 327 (1995), which would permit the court to consider the merits of his otherwise defaulted habeas claims. Taylor received notice of the motion and his opportunity to respond as required by

5

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K).

Taylor filed a response opposing Respondents' Rule 5 Answer and Motion to Dismiss. (ECF No. 21). In addition to re-asserting many of the arguments included in his initial petition, Taylor contends that several newly proffered affidavits are sufficient evidence of his "actual innocence" to permit him to pass through the Schlup gateway and have his claims heard. Taylor also filed a motion to amend his petition to include a claim about the unconstitutionality of life sentences for juveniles (ECF No. 18), a motion for forensic testing experts (ECF No. 22), which asks this court to authorize investigation of the wound suffered by Taft Nesbitt, and a motion to vacate the court's March 9, 2016, Order (ECF No. 24), which denied Taylor's prior motions for appointment of counsel, discovery, and an evidentiary hearing.

After reviewing Taylor's claims, this report concludes that Taylor's federal habeas petition is untimely, and despite allegedly new affidavits, Taylor has not proffered sufficient evidence to show that declining to hear his claims would constitute a miscarriage of justice based on his actual innocence. As to Taylor's other pending motions, this report recommends that the court grant Taylor's motion to amend his petition (ECF No. 18), deny Taylor's motion for forensic testing

(ECF No. 22), and construe his motion to vacate (ECF No. 24) as an objection or appeal of the undersigned's non-dispositive rulings.

## II. RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. The Statute of Limitations Imposes a One-Year Filing Deadline for Federal Habeas Petitions.

Taylor's petition is untimely because it is barred by the statute of limitations that applies to federal habeas corpus petitions. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth a one-year statute of limitations, applicable to petitions for writ of habeas corpus filed by "a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The limitations period begins to run on the latter of (1) the date of final judgment, id. § 2244(d)(1)(A), or (2) the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," id. § 2244(d)(1)(D).

The date of final judgment in § 2244(d)(1)(A) refers to the conclusion of direct review or the date when the time for pursuing an appeal of the judgment expires. Id. § 2244(d)(1)A). For the purposes of subsection (A), although state habeas petitions may toll the running of the limitations period, they do not extend the date on which the conviction becomes final. See Wade v. Robinson, 327 F.3d 328, 332, 333 & n.4 (4th Cir.

7

2003) ("[F]ederal courts do not look to the date of the state court's denial of habeas relief as the date on which the custody judgment becomes final, but, rather, to the date the conviction is affirmed on direct review.").

Section 2244(d)(1)(D) provides that the time limitation also may run from the date on which the factual predicate of a petitioner's claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(D). Under subsection (D), the limitations period begins to run when the petitioner has the opportunity to discover a factual predicate through public sources. Wade, 327 F.3d at 333 (finding that petitioner could have discovered the factual predicate of his claim on the date when his parole revocation became final).

The one-year limitations period of the AEDPA applies to Taylor's petition in this court because he is a person currently in custody pursuant to his 2002 conviction and sentence in the Circuit Court of Prince William County. See Wade, 327 F.3d at 331. In this case, following the grant of a delayed appeal, the Supreme Court of Virginia refused Taylor's petition for appeal by order entered August 9, 2005. Thus, the direct review of Taylor's convictions became final on November 7, 2005, after the time to file a petition for certiorari to the United States Supreme Court expired. Jimenez v. Quarterman, 555 U.S. 113, 121 (2009). Absent tolling, November 7, 2006 — one year later — was

8

the last date on which Taylor could have filed a federal habeas corpus petition or tolled the one-year limitations period through a properly filed state habeas petition. 28 U.S.C. § 2244(d)(2). Taylor did not file any further state habeas petition, and submitted the instant federal habeas petition to prison officials for mailing on May 18, 2015, well over eight years after the federal limitations period expired. See (ECF No. 1).

Taylor also fails to show that he filed his petition within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" as set forth in 28 U.S.C. § 2244(d)(1)(D). In Taylor's present petition, he asserts ten claims for habeas relief. Eight of his claims – numbers one, two, three, five, six, seven, eight, and ten – allege ineffective assistance of trial counsel. Taylor's fourth claim alleges that prosecutors suppressed recorded interviews with Renardo Robinson, and his ninth claim alleges that the trial court violated his right to present a full defense by denying his request to recall prosecution witness Michael Blanchard. (ECF No. 1).

With regard to his ineffective assistance of counsel claims, Taylor asserted either similar, or the exact claims, in his state habeas petition filed in July 2004. State Habeas

Pet., Taylor v. Johnson, No. 041555 (Va. July 7, 2004) (ECF No. 17-2). As to his ninth claim, it relates to actions taken by the court at trial. Accordingly, Taylor fails to show that he discovered the factual predicates for these claims within one year of filing his present habeas petition. See (ECF No. 1).

In his fourth claim, Taylor asserts a Brady violation, which could give rise to a later date for the limitations period. Specifically, Taylor alleges that the "prosecution suppressed [a] perjury deal [in] exchange for false testimony violat[ing] 'Brady v. Maryland' and 14th Amendment." (ECF No. 1, at 44) (citing Brady v. Maryland, 373 U.S. 83 (1963)). Taylor also asserts that prosecutors suppressed recorded interviews with Renardo Robinson, and that this suppressed evidence could have been used to impeach Robinson's testimony and to show that prosecutors made a deal with Robinson in exchange for perjured testimony. Id. at 45-46. "To secure relief under Brady, a defendant must: (1) identify the existence of evidence favorable to the accused; (2) show that the government suppressed the evidence; and (3) demonstrate that the suppression was material." United States v. King, 628 F.3d 693, 701 (4th Cir. 2011) (citing Monroe v. Angelone, 323 F.3d 286, 299 (4th Cir. 2001)). Here, Taylor has made no more than a conclusory claim to withheld evidence, and his petition does not provide any information upon which the court could conclude that

10

the allegedly favorable evidence exists, nor determine when he discovered the alleged suppression. Based on a review of the trial transcript, Taylor appeared to know of Robinson's potential deal with the prosecution because the prosecutor asked Robinson about his motivation for testifying, and Taylor's counsel cross-examined Robinson regarding the possibility of his receiving a lighter sentence. Trial Tr. at 156-57, 182, Commonwealth v. Taylor, Nos. CR 52738 - 52746 (Va. Cir. Ct. Aug. 19, 2002). Taylor provides no credible information to suggest that the government possesses a conflicting recorded statement or that he discovered the alleged Brady violation after his trial, and within one year of filing his present habeas petition.

Accordingly, Taylor's petition is time-barred because he submitted his petition after the one-year statute of limitations, and the petition must be dismissed absent grounds for equitable tolling. 28 U.S.C. § 2244(d); Holland v. Florida, 560 U.S. 631, 634 (2010). Taylor has provided no rationale for his failure to file a timely petition, demonstrating neither diligence nor any exceptional obstacle to prevent his timely filing. Holland, 560 U.S. at 634. Therefore, Taylor is not entitled to equitable tolling and his petition is time-barred. Even if a petitioner is not entitled to equitable tolling, the court may examine an untimely filing if the petitioner asserts

11

credible claims of actual innocence. Although Taylor has tried to avail himself of this exception, his claims of actual innocence are not credible.

**B. Taylor Fails to Show that the Actual Innocence Exception Excuses His Time-Barred Petition.**

A petitioner may have the statutory limitation period excused and pursue a constitutional claim on the merits if he can make a credible showing of "actual innocence." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). However, a petitioner's innocence claim " 'does not by itself provide a basis for relief. Instead, his claim for relief relies critically on the validity' of his procedurally defaulted claims." Teleguz v. Pearson, 689 F.3d 322, 328 (4th Cir. 2012) (quoting Coleman v. Hardy, 628 F.3d 314, 318 (7th Cir. 2010)). That is, a petitioner's "claim of innocence is ... a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.' " Schlup, 513 U.S. at 315. To properly raise a "Schlup gateway actual innocence claim, [the claim] must be supported by 'new reliable evidence.' " Teleguz, 689 F.3d at 328 (quoting Schlup, 513 U.S. at 324). The United States Supreme Court clarified this standard in McQuiggin v. Perkins, holding "that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar,

as it was in Schlup and House, or, as in this case, expiration of the statute of limitations." McQuiggin, 133 S. Ct. at 1928. The Court cautioned "that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' " Id. (quoting Schlup, 513 U.S. at 329).

In making this determination, the reviewing court is not bound by normal rules of admissibility. Teleguz, 689 F.3d at 328. Rather, the court "must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.' " House v. Bell, 547 U.S. 518, 537 (2006) (quoting Schlup, 513 U.S. at 327-28). "Examples of evidence that could establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." Lewis v. Clarke, No. 2:13cv549, 2014 WL 2090563, at * 6 (E.D. Va. May 19, 2014) (citing Schlup, 513 U.S. at 324; Sawyer v. Whitley, 505 U.S. 333, 340 (1992); Pitts v. Norris, 85 F.3d 348, 351 (8th Cir. 1996)) (adopting report and recommendation). In addition, " 'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual

13

innocence." <u>McQuiggin</u>, 133 S. Ct. at 1928 (alteration in original). That is, "unjustifiable delay on a habeas petitioner's part ... [is] not ... an absolute barrier to relief, but [is] ... a factor in determining whether actual innocence has been reliably shown." <u>Id.</u>

Here, Taylor argues that new evidence, in the form of affidavits from six individuals - (1) Wilson Henley, (2) Renardo Robinson, (3) Nana Owusu, (4) Lasandra Johnson, (5) Robin Taylor, and (6) John Robinson - "presents a substantive 'actual innocence' claim." (ECF No. 1, at 18). Specifically, Taylor asserts that these affidavits "corroborate each other and reveal the events that actually led up to the Taft Nesbitt and Adam Newell shootings and exonerate defendant." <u>Id.</u> at 18-19. As to the reliability of the affidavits, Taylor states that:

> L. Johnson (Lasander Johnson) and Raymond Taylor[2] presents [sic] the most direct eye-witness evidence of what actually happened on the night of the Taft Nesbitt and Adam Newell shooting, witness was not involved in any way to the crime and has nothing to gain and nothing to offer, but for what actually they witnessed is more truly persuasive demonstration of the defendants showing of "actual innocence."

<u>Id.</u> at 19. To explain the delay in presenting this evidence, Taylor asserts that the evidence is "[n]ewly discovered evidence of actual innocence," and he "[h]ad to labor for years from a cell to obtain documents." <u>Id.</u> at 28; <u>see also</u> <u>id.</u> at 5. This

---

[2] There is no affidavit attributed to "Raymond Taylor," and no other mention of him in Taylor's petition and supporting documents.

report will address the credibility of each affidavit as a basis to establish the "actual innocence" exception to the limitations bar.

1.  **Affidavits**

    a.  **Wilson Henley**

The first affidavit attributed to "Wilson Henley," and dated December 12, 2014, was included with Taylor's federal petition. (ECF No. 1, at 8). In the affidavit, Henley asserts that Taylor is innocent, and that it was Henley who shot Newell and Nesbitt. Id. Additionally, Henley claims that Renardo Robinson lied at trial, and did not see who shot Nesbitt because his back was turned. Id. A second Henley affidavit, dated October 10, 2015, was submitted with Taylor's response to Respondent's motion to dismiss. (ECF No. 21, at 8-11). The second affidavit details a fight between Henley and Taylor at a party. Id. at 8-9. After the altercation, Henley states that he (Henley) retrieved his gun and proceeded to hunt down Taylor, and that he shot Newell's car and Taft Nesbitt during his pursuit of Taylor. Id. at 9-10.

Henley's affidavits are inherently incredible and conflict with both the eyewitness testimony presented at Taylor's trial and the claims asserted in Taylor's state habeas petition. The first affidavit contains little more than conclusory statements of Henley's guilt and Taylor's innocence. Specifically, Henley

15

declares that Taylor "had nothing to do with the shooting of Taft Nesbitt or Adam Newell," and that he (Henley) was the one who "did those shootings." (ECF No. 1, at 8). Henley also asserts that "Renardo Robinson lied at trial" and asked him "to wrongly blame Ralph [Taylor] for the shootings cause he didn't know Im [sic] the one who had did it." Id. However, Henley does not provide any details about how or why he executed the shootings and omits any mention of the circumstances surrounding the shooting of Newell's vehicle, or the fact that it occurred in a completely different location than the second shooting of Taft Nesbitt. See id.

Taylor also submitted a second affidavit attributed to Henley, which contains a more substantial account of the events surrounding the crimes. (ECF No. 21, at 8-11). In the second affidavit, Henley states: "[M]y friends ... drove behind Ralph's car until it stopped at the stoplight as I passed the galant [Ralph's car] I started shooting at Ralph bullets hit Adam Newell's car, I saw all the cars Rushed [sic] away really fast." Id. at 9. The two affidavits attributed to Henley are written in different handwriting, which detracts significantly from their credibility, and Henley offers no explanation as to why he waited twelve years to come forward and attempt to exonerate Taylor.

More fundamentally problematic, the information in the affidavits conflicts with all of the testimony offered by the eyewitnesses and victims who testified at Taylor's trial. For example, victim Adam Newell identified Taylor as the person in the rear passenger seat of the car that pulled up next to his car, and who spoke with him before the shots were fired at his car. Trial Tr. at 80, Commonwealth v. Taylor, Nos. CR 52738 - 52746 (Va. Cir. Ct. Aug. 19, 2002). Taylor's position in the rear passenger seat of the car was confirmed by the trial testimony of Robinson and Sylvia Alfaro, both of whom were present in the car. Id. at 141, 199. Most importantly, none of the witnesses at trial mentioned a third car that could have been driven by Henley, as alleged in Henley's second affidavit. (ECF No. 21, at 9). Nor did any of them describe shots coming from a different vehicle.

Regarding the robbery, Taft Nesbitt testified that three black males confronted him and Michael Blanchard outside a Michael's Store. Trial Tr. at 96, Commonwealth v. Taylor, Nos. CR 52738 - 52746 (Va. Cir. Ct. Aug. 19, 2002). Likewise, Blanchard testified that three black males approached them that night. Id. at 119. Robinson testified that he, Taylor, and Owusu (three black males) were together when Taylor decided to confront Nesbitt and Blanchard behind the Michael's Store. Id. at 148-50, 164-68; see, e.g., Request for Identification Bureau

17

Services, Commonwealth v. Taylor, Nos. CR 52738 - 52746 (Va. Cir. Ct. Mar. 4, 2002) (identifying Robinson's, Taylor's, and Owusu's race, sex, and dates of birth). Sylvia Alfaro also testified that she, Robinson, Owusu, and Taylor were together that night. Trial Tr. at 197, Commonwealth v. Taylor, Nos. CR 52738 - 52746 (Va. Cir. Ct. Aug. 19, 2002). Specifically, she testified that after parking Robinson's car near Owusu's house, the three males left her in the car and walked away, id. at 201. At trial, none of these witnesses mentioned a fourth male, let alone one who — as described by Wilson Henley — ran out of the night firing a gun at Taylor, only to hit Nesbitt by mistake. (ECF No. 21, at 10). Moreover, Henley's second affidavit states that after Henley supposedly shot Nesbitt, "Ralph and Slyvia [sic] and Renardo and NaNa plus Clay and Losandra [sic] and them all ran into the night." Id. Not only does this conflict with Robinson's and Alfaro's claims that Alfaro remained in the car, but it also places two additional, and previously unmentioned, individuals at the scene. In light of Henley's description of his alleged involvement – involving multiple shots allegedly fired at Taylor at two different locations – it is inconceivable that the involvement of some unidentified assailant would not have been mentioned by any witness at trial.

Finally, in Taylor's state habeas petition, he identified two different exculpatory witnesses who his trial counsel failed

to interview or subpoena, but he never mentioned the existence of Wilson Henley. If Henley's affidavit accurately described the events - that he first fought with Taylor and then later fired multiple shots at him - Taylor would certainly have included this in his state habeas petition. Moreover, in his state habeas petition, Taylor alleged that he provided the names of Clay Monique and Leondro Lazadas to his trial counsel, Mr. Baker, and argued that Baker failed to make any effort to secure their testimony. State Habeas Pet., Taylor v. Johnson, No. 041555 (Va. Feb. 28, 2005) (ECF 17-2, at 10). The trial transcript shows that at trial, Baker stated that there was one witness he had not summoned, Trial Tr. at 6, Commonwealth v. Taylor, Nos. CR 52738 - 52746 (Va. Cir. Ct. Aug. 19, 2002), and Taylor's state habeas petition suggested that witness was Lazadas or Monique. See State Habeas Pet., Taylor v. Johnson, No. 041555 (Va. Feb. 28, 2005) (ECF No. 17-2, at 10). Now, however, Taylor alleges that "Wilson Henley" was the witness whose name he provided to Baker before trial. (ECF No. 1, at 6-7). Taylor even cites the same portion of the trial transcript in which Baker stated that "there's one witness I haven't summoned" to support that allegation. Id. at 6, 11. But given the glaring inconsistencies with all of the evidence at trial, and with Taylor's own sworn state habeas petition, Henley's two

affidavits are not "new reliable evidence" of Taylor's innocence.

> b.   Renardo Robinson

Renardo Robinson's affidavit is dated November 18, 2015, and Taylor submitted this affidavit with his current habeas petition. (ECF No. 1, at 49). In the affidavit, Robinson states that he "was offered a deal to lie on Ralph Taylor in exchange to have my charges thrown out to get out of prison quicker. But Ralph Taylor really had nothing to do with the shooting of Adam Newell or the shooting and robbery of Taft Nesbitt or Micheal [sic] Blanchard." Id.  Robinson also states that he "told detectives during [his] first video recorded interview [he] didn't see who shot or where it came from. [B]ut detectives and prosecutors said if you want the deal this is what you specifically have to say." Id.

Robinson's affidavit asserts Taylor's innocence, but does not provide specifics about the shootings or robbery. That is, Robinson's affidavit alleges that detectives and prosecutors coerced him to give false testimony because they indicated that "[i]t was either Ralph or me [Robinson]." Id.  However, Robinson does not admit to the shootings himself – nor does he assert that the previously unknown assailant "Wilson Henley" committed the crimes.  In addition, neither Robinson, nor Taylor, explains the delay in presenting this evidence, and this

delay is a factor that weakens the credibility of this affidavit.

### c. Nana Owusu

Taylor also submitted an affidavit attributed to Nana Owusu, one of Taylor's friends who was also present on the evening of the shooting. The affidavit is included with Taylor's federal habeas petition and claims that Taylor is innocent because "somebody" else shot at Taylor, accidentally hitting Adam Newell's car and Taft Nesbitt in the process. (ECF No. 1, at 21).

As with Henley, a second affidavit is attributed to Owusu, and Taylor filed the second affidavit with his response to Respondent's motion to dismiss. (ECF No. 21, at 12). Owusu's second affidavit (remarkably like Henley's) details a fight between Taylor and Henley, among others, which precipitated Henley's alleged attempts to shoot Taylor, resulting in the damage to Newell's car and wounding of Nesbitt. Id. Like Henley's affidavit, Owusu's second affidavit alleges that more people were with Taylor at the time Nesbitt was shot, namely "Lasandra" and "Leoandro." Id. The former likely refers to Lasandra Johnson, who also authored an affidavit included in Taylor's petition, and the latter is presumably Leondro Lazadas, one of the potential exculpatory witnesses mentioned in Taylor's state habeas petition.

In all, Owusu's affidavits are not credible for many of the same reasons that Henley's affidavits were not. Specifically, Owusu's first affidavit offers conclusions about Taylor's innocence without any context or explanation and does not expressly mention that Henley or anyone else was the shooter. Owusu's second affidavit does identify Henley as the shooter, but as with Henley's second affidavit, the second Owusu affidavit directly conflicts with all of the eyewitness testimony at Taylor's trial, none of which mentioned a fourth individual firing a gun at Taylor behind the Michael's Store, or a third car, the occupants of which could have shot at Newell. Finally, as with the Henley materials, Owusu's alternate description of events is not mentioned anywhere in Taylor's sworn state habeas petition.

### d. Lasandra Johnson

In her affidavit, Lasandra Johnson claims that she witnessed Nesbitt's shooting while "walking from the store" on February 18, 2002. (ECF No. 1, at 20). Johnson is not mentioned in the record of Taylor's trial or appeals, however Owusu's and Henley's second affidavits place her at Nesbitt's shooting. (ECF No. 21, at 10, 12). Because Owusu and Henley identify Johnson, this means Owusu and Henley would have known Johnson because they presumably would not be able to identify a stranger. However, Taylor does not explain why he did not

previously name Johnson as a possible exculpatory witness, and he does not explain why every eyewitness testifying at trial failed to mention Johnson's presence.

The details of Johnson's affidavit also conflict with the testimony at trial. Specifically, in Johnson's affidavit, she asserts that she "saw Wilson Henley run pass [sic] me yelling Ralph I'm going to kill you" before firing and hitting Nesbitt. (ECF No. 1, at 20). As discussed above, none of the eyewitnesses at trial mentioned the presence of a fourth male at the scene – much less one who was screaming his intent to kill Taylor moments before mistakenly shooting Taft Nesbitt. These major inconsistencies and the nearly fifteen-year delay in identifying Johnson detract heavily from the affidavit's credibility.

Finally, Johnson's affidavit, if truthful, actually undermines Taylor's claims of actual innocence. Johnson acknowledges that a robbery occurred on the night of the shootings, and she alleges that "[Taylor] was standing to the side" and "looked like he wasn't involved." Id. In fact, this portion of the affidavit is entirely consistent with Taylor's earlier line of defense. That is, at one point, Taylor admitted to participating in the offenses, but denied being the triggerman. (ECF No. 17-6, at 2). Johnson's account therefore

23

corroborates Taylor's presence during the robbery and his defense at trial, which was previously rejected by the jury.

### e. Robin Taylor

Taylor also included an affidavit from his mother, Robin Taylor, with his federal habeas petition. The essence of Ms. Taylor's statement is that detective Janice Hetzel used physical force to extract information from Taylor while interviewing him in the hospital. Specifically, the affidavit alleges that Hetzel tightened the handcuffs around Taylor's injured wrist, yelled at him, and frequently toggled the tape recorder on and off throughout the interview. (ECF No. 1, at 65). The trial transcript includes references to Ms. Taylor's presence in the courtroom, however, Taylor does not explain her long delay in presenting this evidence. See Trial Tr. at 12, Commonwealth v. Taylor, Nos. CR 52738 - 52746 (Va. Cir. Ct. Aug. 19, 2002). If Taylor's mother had observed firsthand the interrogation she now describes, it would certainly have been mentioned at his trial – or at a minimum in his state habeas proceeding years later. It was not. Thus Ms. Taylor's long delay in coming forward fatally undermines the credibility of her affidavit.

### f. John Robinson

The final affidavit is from John Robinson. See (ECF No. 1, at 77). His affidavit states:

24

> I am a friend of Mr. Ralph Taylor, Jr. and have known him since 1999.  I know him to be a good, honest, compassionate, helpful and happy person.  I've never known him to be bias or violent towards anyone .... I know and believe that Ralph Taylor, Jr. would never do what he is being accused of.  Ralph is innocent.... Ralph was portrayed all wrong and incorrectly at trial.

Id.  Robinson's affidavit does not provide any information about Taylor's crime, and instead only addresses Taylor's character. Moreover, although Robinson proclaims Taylor's innocence, id., neither his affidavit, nor any of Taylor's filings, suggests that Robinson had firsthand knowledge of the crimes at issue. Therefore, although the affidavit may speak to Taylor's character, it does not provide new reliable evidence to support his claim of actual innocence.

> 2.    Taylor Fails To Meet the Threshold Requirements of the Actual Innocence Exception.

As discussed above, "[w]hen a petitioner raises a Schlup gateway actual innocence claim, it must be supported by 'new reliable evidence.' " Teleguz, 689 F.3d at 328.  Here, the affidavits submitted by Taylor are not "new reliable evidence" because Taylor does not explain why the affiants waited more than ten years to present their testimony, and he does not provide any explanation about obvious conflicts between the trial witnesses and the affiants.  In addition, the alternate version of the offense presented by the "Wilson Henley"

affidavit and other affidavits was totally absent from Taylor's state habeas petition. Based on these inconsistencies and a "holistic determination of how a reasonable juror would perceive all of the evidence in the record," the undersigned does not find that "a reasonable juror would more than likely have a reasonable doubt" as required under Schlup. Id. at 330. That is, Taylor fails to show that upon review of all of the evidence, a reasonable juror would be prevented from finding him guilty beyond a reasonable doubt. Because the affidavits are neither reliable, nor credible, and Taylor fails to explain the delay in presenting this evidence, the undersigned finds that Taylor has not met the threshold requirements necessary for the court to consider the merits of his time-barred petition.

C.    Taylor's Pending Motions

On September 15, 2015, Taylor filed a motion, seeking to amend his habeas petition to add a claim about the unconstitutionality of a life sentence for a juvenile offender. (ECF No. 18). The undersigned recommends that the court grant Taylor's motion to amend his petition. However, Taylor did not receive a life sentence, and the new rule announced in Miller v. Alabama, 132 S. Ct. 2455 (2012), does not apply to his convictions or sentence. Therefore, his amendment does not state a claim for habeas relief.

26

On October 20, 2015, Taylor filed a motion, styled "Motion for forensic testing experts," in which he requests forensic analysis of the evidence presented at trial.   (ECF No. 22). Specifically, Taylor asserts that the "prosecution's alleged key witness Robinson testified, 'petitioner shouldn't have shot Taft Nesbitt in the stomach,' when in fact Taft Nesbitt contradicts Robinson's statements, by confirming he was only shot once, which Taft confirms was in the back."  Id.  He states that the "forensic expert can conclude Taft Nesbitt was only shot once, which was in the back, surely, a forensic's [sic] expert could resolve this claim."  Id.  However, any claim related to the absence of expert testimony at trial is time-barred, and accordingly, this report recommends that the court deny Taylor's motion for forensic experts.

Finally, Taylor filed a motion (ECF No. 24), on March 24, 2016, seeking to vacate the undersigned's March 9, 2016, Order, in which the undersigned denied Taylor's Motion to Appoint Counsel (ECF No. 3), Motion for Discovery (ECF No. 4), and Motion for Evidentiary Hearing (ECF No. 13).  In his motion, Taylor asks that "[t]his case be removed from the Magistrate Judge's purview to the District Judge, and that these motions be reconsidered."  Id. at 1.  He also argues that "the matters before the court are not 'premature' as in the opinion of the Magistrate Judge, but rather these issues are ripe, and have

merit," and that because "[t]he issues presented in [his] habeas petition are of a complex nature, and as petitioner is ignorant of the law, as well as the intricate rules and procedures of the federal courts, appointment of counsel is warranted." Id. at 2. The undersigned recommends that the court construe Taylor's motion to vacate (ECF No. 24) as an appeal of the undersigned's rulings on Taylor's prior non-dispositive motions under Rule 72(a).

### III. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court GRANT Taylor's Motion to Amend (ECF No. 18), DENY Taylor's Motion for Forensic Testing Experts (ECF No. 22), GRANT Respondent's Motion to Dismiss (ECF No. 15), and that Taylor's petition for a writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and the claims DISMISSED with prejudice.

With regard to Taylor's Motion to Vacate (ECF No. 24), he appears to challenge the undersigned's rulings on non-dispositive matters, and he requests review by the District Judge. Accordingly, this report recommends that the court consider Taylor's motion as an objection or appeal of the undersigned's non-dispositive rulings under Rule 72(a).

### IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

28

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendation within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. §636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.   Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk shall mail a copy of this Report and Recommendation to the Petitioner and to counsel of record for the Respondent.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
April 21, 2016

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to:

Ralph Taylor, Jr.
#1064683
Sussex II State Prison
24427 Musselwhite Dr.
Waverly, VA 23891

and an electronic copy was provided to:

Benjamin Hyman Katz
Office of the Attorney General
900 E. Main St.
Richmond, VA 23219

Fernando Galindo, Clerk

By_____
            Deputy Clerk

_____, 2016

30